**REEL PIPE & VALVE COMPANY, INC., Viola Sheffield and Andrew Sheffield, Jr., d/b/a Swancy's Auto Laundry; Eleanor Swatts and Hobart Banks; Greg Know; and Evelyn Rusthoven, Jeanetta B. Greene, Appellants–Plaintiffs,**

v.

**The CONSOLIDATED CITY OF INDIANAPOLIS–MARION COUNTY, et al., Appellees–Defendants.**

No. 49A05–9211–CV–403.

Court of Appeals of Indiana, Fifth District.

April 26, 1994.

Transfer Denied July 27, 1994.

---

Douglass R. Shortridge, Indianapolis, for Reel Pipe & Valve Co., Inc.

Jerry W. Newman, Indianapolis, for Viola Sheffield and Andrew Sheffield, Jr., d/b/a Swancy's Auto Laundry; Eleanor Swatts and Hobart Banks; Greg Knox; Evelyn Rusthoven; and Jeanetta B. Greene.

Andrew P. Wirick, City–County Legal Div., David F. Hamilton, David R. Warshauer, J. Mark Mutz, Barnes & Thornburg, Indianapolis, for appellees.

RUCKER, Judge.

## STATEMENT OF THE CASE

The Marion Superior Court sitting *en banc* affirmed a resolution of the Metropolitan Development Commission (Commission) which amended a plan adopted under provisions of the Indiana Redevelopment Act. The resolution provided in part that certain real property located in an area previously designated as blighted should be included on a list of property to be acquired by the Commission. Landowners whose property was added to the list now appeal.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the Commission's "blighted area" designation is void because owners of property located in the area received no actual notice of the 1982 public hearing at which the designation was adopted.

2. Whether the Commission's decision adding appellants' property to the acquisition list is void because Landowners were denied an opportunity to challenge the "blighted area" designation at a 1992 public hearing.

3. Whether the trial court erred in finding that Landowners will have the right to contest the "blighted area" designation in any future eminent domain proceedings.

We affirm.[1]

## BACKGROUND

This case arises under provisions of the Indiana Redevelopment Act (the Act) which sets forth a comprehensive statutory scheme for the clearing, replanning, and redevelopment of blighted, deteriorated, and deteriorating areas in a redevelopment district. Ind.Code § 36–7–15.1–30. Under the statute

---

1. Because issues one and two are dispositive we decline to address issue three. We note, however, there is recent authority that suggests Landowners will not be able to challenge the "blighted area" designation at any future eminent domain proceedings. In *City of Evansville v. Reising* (1989), Ind.App., 547 N.E.2d 1106, *trans. denied,* we held, "[a] factual question as to whether an area is blighted cannot be raised in an eminent domain condemnation proceeding.... Such questions relating to the factual situation upon which a declaratory resolution is based must be raised by remonstrance and appeal within the statutory framework provided by the legislature...." *Id.* at 1110 citing *Suttmiller v. City of Batesville* (1967), 248 Ind. 391, 393, 226 N.E.2d 893, 894.

a consolidated city [2] is vested with authority to establish a Metropolitan Development Commission to carry out provisions of the Act. The Commission's duties include investigating, studying and surveying blighted, deteriorated and deteriorating areas; selecting and acquiring areas to be redeveloped; and replanning and disposing of the areas in a manner that best serves the social and economic interests of the city and its inhabitants. I.C. § 36–7–15.1–6. The Commission may purchase any real or personal property needed for redevelopment of blighted areas; clear real property acquired for redevelopment purposes; and exercise the power of eminent domain in the name of the city. I.C. § 36–7–15.1–7.

Once the Commission finds that an area in a redevelopment district has become blighted it must prepare maps and plats describing the affected area, list the owners of property proposed to be acquired, and estimate the cost of acquisition and redevelopment. I.C. § 36–7–15.1–8. Thereafter, the Commission must adopt a proposed resolution declaring that the blighted area is a detriment to the social or economic interests of the city and its inhabitants, and that it will be of public utility and benefit to acquire and redevelop the area. *Id.* After the Commission determines whether the proposed resolution and redevelopment plan conforms to the comprehensive plan of redevelopment for the city, the Commission must then either approve or disapprove the proposed resolution and plan. I.C. § 36–7–15.1–9.

Once the resolution and plan have been approved, the Commission must give notice by newspaper publication of the approval and substance of the resolution. I.C. § 36–7–15.1–10. Among other things, the notice must identify the date when the Commission will receive and hear remonstrances and other testimony from interested parties. *Id.* At the hearing, the Commission shall hear all persons interested in the proceedings. After considering the evidence presented, the Commission shall take final action determining the public utility and benefit of the proposed

project, and confirming, modifying and confirming, or rescinding the resolution. *Id.* If the Commission thereafter proposes to amend the resolution, then a subsequent public hearing must be conducted. Notice by certified mail must be given to affected property owners if the proposed amendment either enlarges the boundaries of the area by more than twenty percent or adds one or more parcels of land to the existing list of property to be acquired. I.C. § 36–7–15.1–10.5

Any party aggrieved by the decision of the Commission may appeal to the Superior Court which must hear the matter sitting *en banc.* I.C. § 36–7–15.1–11. The Court then decides the appeal based on the record and evidence before the Commission, not by trial de novo. By at least a majority vote, the judges may either confirm the final action of the Commission or sustain the remonstrances. *Id.*

## STATEMENT OF THE FACTS

On March 12, 1982, the Commission approved a proposed resolution declaring a large section of the City of Indianapolis as blighted, deteriorated and deteriorating. The affected area was bordered on the north by 10th Street, 11th Street and Interstate Highway 65, bordered on the south by New York Street, bordered on the east by Senate Avenue and Capitol Avenue, and bordered on the west by West Street and Indiana Avenue. In support of the resolution, the Commission found that one-fourth of the land had been cleared and remained vacant, one-third of all residences were vacant, one-fifth of all buildings were vacant, one-third of the buildings had major structural defects, and the population of the area had dropped significantly from 1969 to 1981. According to the Commission, the area required disproportionate public spending on crime, public health and safety, fire and accident prevention and other public services, and the visibly deteriorating conditions detracted seriously from the quality of residential life and undermined improvement efforts in the project area and surrounding areas. *Record* at 73.

**2.** According to the 1990 federal census and Ind. Code § 36–4–1–1, Indianapolis is the only consolidated city in the State of Indiana.

Pursuant to statute, notice of the Commission's resolution was published in three newspapers: The Indianapolis Recorder, The Indianapolis Star and The Indianapolis News. The notice indicated that maps, plats, and an Urban Renewal Plan had been prepared and were available for inspection at the offices of the Commission. The notice also set a time, date, and location for public hearing at which any person interested in or affected by the proceedings could appear and be heard.

Plaintiffs–Appellants Reel Pipe & Valve Company, Inc., Viola Sheffield and Andrew Sheffield, Jr., d/b/a Swancy's Auto Laundry, Eleanor Swatts, Hobart Banks, Greg Knox, Evelyn Rusthoven, and Jeanetta B. Greene (referred to collectively as "Landowners") all own real estate property located within the area designated as blighted. Landowners did not appear at the April 21, 1982 public hearing at which the Commission confirmed and adopted the proposed resolution.

As funds became available over the next several years the Commission proceeded with its urban renewal project. The project included construction and rebuilding of a residential housing development known as Lockfield Gardens, restoration of the historic Madame Walker Theatre, and partial redevelopment of a 19th Century Canal referred to as the Canal Walk Project.

In 1992, the Commission adopted a proposed amendment to the 1982 resolution. Because the amendment sought to add additional parcels of land in the redevelopment area to the existing list of property to be acquired, affected property owners were given notice by certified mail.

Public hearings were held May 6, 1992, and June 17, 1992. In addition to written submissions, the Commission received testimony in support of and in opposition to the proposed amendment. The City of Indianapolis presented testimony that it proposed to spend approximately $10 million restoring and improving the northern portion of the Central Canal to complete the Canal Walk Project already underway south of St. Clair Street; that the canal improvements south of St. Clair Street have involved public investments of about $25 million which are fostering additional investments of approximately $165 million; and that, when completed, those developments will provide more than 1,800 housing units, and nearly 500,000 feet of commercial, office and development facilities where more than 1,600 people will be employed.

The Commission heard testimony that in order for the area to be redeveloped, additional property near the canal, including Landowners' properties, needed to be acquired by the Commission in order that marketable parcels for redevelopment compatible with the overall redevelopment plans for the area may be realized. The Commission also heard testimony that the City plans to assemble marketable parcels along the restored canal for redevelopment of multi-family housing, commercial, and research and technology uses.

Landowners opposed inclusion of their property on the list of property to be acquired but did not object to the overall project of improving the canal and redevelopment area. Landowners were not permitted to cross examine witnesses nor introduce evidence challenging the 1982 resolution declaring the area as blighted.

After considering the testimony and evidence presented at the hearing, the Commission approved and adopted the Consolidated Redevelopment Project Area III, Northwest Redevelopment Project Urban Renewal Plan (Resolution 92–43) along with an acquisition list that included Landowners' property. Thereafter, Landowners appealed the Commission's decision to the Marion Superior Court sitting *en banc*. After conducting a hearing, the court in a six to three vote affirmed the Commission. In so doing, the court set forth detailed Findings of Fact and Conclusions of Law including a finding that Landowners would have the opportunity to challenge the Commission's blight determination in any future eminent domain proceedings. This appeal arose in due course.

## DISCUSSION AND DECISION

### I.

Landowners first contend the Commission's "blighted area" designation is void be-

cause Landowners did not receive actual notice of the 1982 public hearing at which the designation was adopted and approved. Citing *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; *Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180; and *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565, Landowners argue that actual notice is a minimum constitutional precondition to any proceeding which will adversely affect the liberty or property interest of any party. Landowners do not contend that the statute requiring notice by publication is unconstitutional. Rather, they argue that because the 1982 hearing was a proceeding adversely affecting their property interest, notice by mail was constitutionally required. We disagree.

The trilogy of Supreme Court cases relied on by Landowners all stand for the same principle, namely: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. Applying the *Mullane* principle, the Supreme Court also held "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party...." (emphasis in original.) *Tulsa,* 485 U.S. at 485, 108 S.Ct. at 1344 quoting *Mennonite,* 462 U.S. at 800, 103 S.Ct. at 2712.

■ Contrary to Landowners' argument, the foregoing authority does not mandate actual notice of the 1982 public hearing. We first observe the actual determination of blight was not made at the hearing. That determination had already been made by the Commission pursuant to statute. The public hearing, conducted also pursuant to statute, was designed to allow interested parties an opportunity to remonstrate against the decision. In that regard the Commission engaged in a legislative function determining that preliminary steps needed to be taken in order to ultimately acquire certain properties in the designated area by eminent domain.

There is no question that a property owner is constitutionally guaranteed and entitled to just compensation when his or her property is appropriated for public use. Nor is there any question that a property owner is entitled to notice and hearing on the question of just compensation. However, a property owner has no constitutionally protected right to participate in a legislative decision which may or may not lead to future eminent domain proceedings. *Rassi v. Trunkline Gas Company* (1968), 262 Ind. 1, 240 N.E.2d 49, 53; *Slentz v. Fort Wayne* (1954), 233 Ind. 226, 118 N.E.2d 484, *citing Bragg v. Weaver* (1919), 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135. As the *Rassi* court observed:

> There is much authority to the effect that the extent of the public necessity for a proposed improvement, the suitableness of the location selected, and the consequent necessity of taking the land selected for its site are all questions for the legislature to determine, and the courts have no power to interfere or substitute their own views for those of the legislature unless the action by the legislature is arbitrary.

240 N.E.2d at 53.

In this case, the Commission determined that the area here in dispute is blighted. Such determination was a proper legislative function which did not trigger a constitutional right to notice. Further, Landowners do not allege, nor does the record support the notion that the Commission acted arbitrarily in reaching its decision.

■ Assuming for the sake of argument that Landowners were entitled to remonstrate at the 1982 public hearing and thereby contest the blight determination, their contention that they were entitled to actual notice of the hearing nonetheless fails. Actual notice is constitutionally required only where the proceeding will adversely affect a person's liberty or property interest. *Mennonite,* 462 U.S. at 801, 103 S.Ct. at 2712. Here, the record does not show how or in what manner the blight determination hearing adversely affected Landowners' interests. In their brief, Landowners assert the 1982 blight determination "effectively froze [their

property's] use, lowered its value and restrained free alienation." *Brief of Appellants* at 25. However, there is no evidence in the record before us which supports this assertion. The record does indicate that after the blight determination was made the Division of Economic and Housing Development for the City of Indianapolis had to approve any building permits, or zoning or other changes in the blighted area. There is nothing in the record, however, indicating that Landowners sought and were denied any such permits or zoning changes.

■ We also must reject Landowners' contention that the mere declaration of blight is itself an unconstitutional taking for which actual notice is required. To the contrary, the process of declaring an area blighted and adding property to the acquisition list does not result in the taking of property. Rather, only after proceeding with these preliminary steps may the Commission begin the process of actually acquiring property by eminent domain. *See accord Robinette v. Chicago Land Clearance Comm'n* (1951), N.D.Ill., 115 F.Supp. 669. Because the proceeding is only a preliminary step in a long process of actually acquiring property, it is not a final adjudication of Landowners' rights and for this additional reason no actual notice was required. *See Calhoun v. Jennings* (1987), Ind., 512 N.E.2d 178, *reh'g denied* (issuance of a tax deed not a final adjudication of rights as the title is subject to challenge in a quiet title action).

We hold that the 1982 public hearing at which the blighted area determination was confirmed and adopted by the Commission was not a proceeding adversely affecting the Landowners' property interest. Thus, notice by mail was not constitutionally required.

**II.**

■ Landowners next contend the Commission's decision adding their property to the acquisition list is void because Landowners were denied an opportunity to challenge the 1982 "blighted area" determination at the 1992 public hearing. Landowners cannot prevail on this issue because the Commission was not required to revisit the question of blight. The law is clear. Indiana Code § 36–7–15.1–10.5 provides in relevant part:
(c) When the commission proposes to amend a resolution or plan, the commission is not required to have evidence or make findings that were required for the establishment of the original redevelopment area, urban renewal area, or economic development area.
Only where the proposed amendment enlarges the original boundaries of the area by more than twenty percent is the Commission required to reconsider the blight issue. Ind. Code § 36–7–15.1–10.5(f).

The proposed amendments here did not include an enlargement of the original boundaries of the blighted area. Rather, the amendments involved the inclusion of additional properties to be added to the acquisition list, and the modification of certain sections of the land use provisions and proposed project activities. Under the clear provisions of § 10.5 of the Act, the Commission was not required in 1992 to hear evidence or make findings on the 1982 determination of blight.

In a related vein, Landowners argue their property is not blighted. In support of their argument, Landowners contend that if their property actually represented a public health and safety nuisance, then the Commission would not have taken nearly ten years to "formally assert its right to condemn Appellants' property." *Brief of Appellants,* at 30. Thus, Landowners conclude, not only is their property not blighted but also the equitable doctrine of laches prohibits the Commission from asserting otherwise.

■ Landowners' argument fails for a number of reasons. First, the fact that Landowners' individual property is not blighted is of no moment. The relevant issue is whether Landowners' property is located in an *area* that is blighted. *See Murray v. Richmond* (1971), 257 Ind. 548, 276 N.E.2d 519; *Alanel Corp. v. Indianapolis Redevelopment Comm'n* (1958), 239 Ind. 35, 154 N.E.2d 515. Next, Landowners' property has not been condemned. Rather, it has merely been placed on a list. At some point in the future, the Commission may or may not proceed to acquire such property by eminent domain through judicial condemnation

**280**

pursuant to Ind.Code § 32–11–1–1 to –13. Also, Landowners have not shown that the doctrine of laches applies in this case. Laches is an affirmative defense that must be pleaded and proved and cannot be raised for the first time on appeal. *Goebel v. Blocks & Marbles Brand Toys, Inc.* (1991), Ind.App., 568 N.E.2d 552. In their complaint before the *en banc* trial court, Landowners did not raise laches as an affirmative defense, but, rather, make the assertion for the first time before this court. Thus, the issue is waived for appellate review.

 Waiver notwithstanding, Landowners' argument nonetheless fails. Laches involves 1) inexcusable delay in asserting a right, 2) implied waiver of the right arising from knowing acquiescence in existing conditions, and 3) circumstances causing prejudice to the adverse party. *Taylor v. Metropolitan Development Commission* (1982), Ind.App., 436 N.E.2d 1157.

Among other things, the element of inexcusable delay is absent here. The Act anticipates that a project area will be redeveloped in stages. This is only logical and comports with sound urban planning because any comprehensive redevelopment effort results in a considerable drain on public finances. The Act, for example, acknowledges that a redevelopment project should only be pursued "to the extent that money is available for that purpose." Ind.Code § 36–7–15.1–12. The record here reveals that redevelopment of the blighted area is a long-term project that the Commission has pursued over a number of years. Between 1982 and 1990, the Redevelopment Plan has been amended at least four times. On each occasion properties were added to the acquisition list. As funds became available during that time the Commission proceeded with its urban renewal project. The project included construction and rebuilding of a residential housing development known as Lockfield Gardens, restoration of the historic Madame Walker Theatre, and partial redevelopment of a 19th Century Canal referred to as the Canal Walk Project. The addition of Landowners' property to the acquisition list in 1992 was simply the latest in a long series of steps the Commission has taken to redevelop the area. The ten-year delay in adding Landowners' property to the acquisition list was neither inexcusable nor unreasonable. As a result there was no laches.

Judgment affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.