## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2016, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Eric J. Benner
Laurie D. Johnson
Boje, Benner, Becker, Markovich & Hixson, LLP
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Rodney T. Sarkovics
Sarkovics Law
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark A. Laesch,

*Appellant-Respondent,*

v.

Kathryn B. Laesch,

*Appellee-Petitioner.*

August 24, 2016

Court of Appeals Case No. 29A02-1512-DR-2314

Appeal from the Hamilton Superior Court

The Honorable Daniel J. Pfleging, Judge

Trial Court Cause No. 29D02-1203-DR-3142

**Pyle, Judge.**

# Statement of the Case

Mark A. Laesch ("Husband") appeals the trial court's order, which: (1) required him to pay interest on the unpaid balance of a settlement judgment he owed to his former wife, Kathryn B. Laesch ("Wife"), pursuant to their dissolution decree; (2) found him in contempt of court for failing to obtain life insurance as the trial court had ordered him to do in the dissolution decree; and (3) required him to pay Wife's attorney fees as a sanction for his contempt of court.

On appeal, Husband challenges the trial court's conclusion that he should pay interest on the balance of Wife's judgment, arguing that: (1) the dissolution decree provided that interest would accrue only if he did not pay his monthly installment payments in a timely manner; and (2) the equitable doctrine of laches should bar Wife from recovering interest. Husband also challenges the trial court's contempt finding and sanction, arguing that: (1) the trial court violated his right to due process by failing to inform him of the factual basis for the contempt allegation prior to the contempt hearing; (2) there was no evidence that he willfully disobeyed the dissolution decree; and (3) the trial court did not offer him the opportunity to purge his contempt before sanctioning him.

With respect to Husband interest arguments, we conclude that the dissolution decree provided that interest would accrue on the balance of Wife's judgment and that Husband waived his laches claim by failing to raise it as an affirmative defense. As for Husband's contempt and sanction arguments, we conclude that

the trial court did not violate his right to due process, there was evidence that he willfully disobeyed the dissolution decree, and the trial court was not required to offer him the opportunity to purge his contempt. Accordingly, we conclude that the trial court did not abuse its discretion, and we affirm its decision.

We affirm.

## Issues

1. Whether the trial court erred when it determined that Husband was required to pay Wife interest on the balance of the judgment he owed her under their dissolution decree.

2. Whether the trial court abused its discretion when it found Husband in contempt of court for failing to obtain life insurance as previously ordered.

3. Whether the trial court abused its discretion when it ordered Husband to pay Wife's attorney fees as a sanction for his contempt of court.

## Facts

Husband and Wife married on June 17, 1978, and they dissolved their marriage on October 7, 2013. In their dissolution decree, the trial court ordered, in relevant part, that:

> 8. Wife shall have a judgment against the Husband in the amount of $272,020.78, which shall be paid to Wife either in a lump sum or in eighty-four (84) monthly installments at the rate of $3,238.38 per month beginning sixty (60) days from the date of the Decree and monthly thereafter until such judgment is fully satisfied. Wife is entitled to legal interest rate on any unpaid balance of this judgment; this judgment shall be in the nature of domestic support and shall not be dischargeable in bankruptcy.

> Husband is ordered to obtain a life insurance policy in the full amount of this judgment naming the Wife as the irrevocable beneficiary; Husband shall be entitled to reduce the face value of the life insurance annually concurrent with the reduction in his obligation to Wife.

(App. 36-37). Subsequently, Husband timely paid Wife the monthly installments authorized by the decree but failed to obtain life insurance naming Wife as an irrevocable beneficiary.

[6] On September 11, 2015, Wife filed a motion requesting that the trial court clarify the dissolution decree's provision that she was entitled to the "legal interest rate on any unpaid balance of [the] judgment." (App. 44). She argued that the court should interpret this provision as requiring Husband to pay interest on the unpaid balance of the entire settlement judgment because, otherwise, he would have no incentive to pay the judgment in a lump sum and would essentially "receive[] an interest-free loan." (App. 44). Husband responded and argued that interest should only accrue if he did not make a monthly installment payment in a timely manner.

[7] In addition to her motion for clarification, Wife filed a verified motion for rule to show cause on September 11, 2015. In this motion, she asked for the trial court to hold a hearing and find Husband in contempt of court for failing to obtain life insurance. She also requested, as a sanction for the contempt, that the trial court allow her to recover the attorney fees she had accrued filing both her motion for clarification and her motion for rule to show cause.

[8] On October 26, 2015, the trial court held a hearing on both of Wife's motions. At the hearing, Husband testified regarding his attempts to obtain life insurance. He revealed that, prior to the dissolution, he had experienced three blood clots—a "very bad one" in 2009, a "not quite as bad one" in 2011 or 2012, and a "pretty significant one" in late July or early August 2013. (Tr. 76, 77). After his first two clots, he had been required to take medication for about nine months. After the third clot, he had been diagnosed with "DVT."[1] (Tr. 77). Husband testified that at that point, he had talked to a "third party" and discovered that his clots could prevent him from obtaining life insurance. (Tr. 79). He discussed the issue with his financial advisor, Dan Brunette ("Brunette"), in March 2014, and Brunette agreed. He advised Husband that he would not have a chance of obtaining life insurance within a year of his DVT diagnosis and that it would likely be "two years before anybody would really look at [his application] seriously." (Tr. 81). Accordingly, Brunette recommended that Husband wait to apply for insurance until he was "cleared."[2] (Tr. 81).

[9] Thereafter, Husband testified, he waited for a year until Brunette told him, in June or July of 2015, that enough time had passed that he might have a chance

---

[1] Husband did not clarify the meaning of the acronym "DVT" at the hearing, but he explained in his Appellant's Brief that "DVT" stands for "deep vein thrombosis." (Husband's Br. 18) (capitalization removed).

[2] One of Brunette's employees explained at the hearing that any time an insurance company denies a person's insurance application, that denial is filed with the medical information bureau, and that record might cause trouble to the person obtaining affordable insurance at a later time.

of obtaining insurance. At that time, Husband applied to John Hancock Life Insurance for a life insurance policy with a face value of $500,000. In response to his application, he received a "rating" of 250%, which meant that if he were to obtain his requested policy, he would have to pay a raised premium of $23,000 per year. Husband testified that because this quote was so high, he had submitted another application to Prudential Insurance. As of the hearing, this second application was still pending.

[10] Brunette's employee also testified at the hearing regarding Husband's attempts to obtain life insurance. She said that throughout the application process, Husband had "called on many occasions wanting to know the progress of [the application];" had scheduled his exam "right away;" had completed the application "right away;" and had "gotten anything back to [her] that [she had] needed." (Tr. 44).

[11] Although Husband admitted at the hearing that he had failed to obtain life insurance as ordered, he testified that he had tried to secure Wife's judgment through other means. Specifically, he said that he had kept Wife as the beneficiary of a life insurance policy worth approximately $41,000 that he had obtained prior to the dissolution. He also testified that he had named Wife as

the beneficiary of his net estate in his will. He claimed that the amount in his net estate was "absolutely" more than the amount he owed Wife.[3] (Tr. 83).

[12] However, at the conclusion of the hearing, the trial court found Husband in contempt of court for failing to obtain life insurance that complied with its decree. The court ordered Husband to obtain an insurance policy within forty-five days and to provide proof of the policy to Wife. The court then took the issue of sanctions for the contempt and interest on Wife's judgment under advisement.

[13] A little over a month later, on December 9, 2015, the trial court issued an order on the remaining issues Wife had raised in her motion to clarify and motion for rule to show cause. It found that the monthly payments Husband owed Wife under the dissolution decree were "for a property settlement money judgment" rather than support and that, accordingly, Husband owed 8% interest on the unpaid balance of the judgment regardless of whether his monthly payments were timely. (App. 18). Based on this finding, the trial court concluded that Husband owed Wife $34,434.38 for the interest that had accrued and was past-due by the time of the hearing. It also ordered Husband to pay $4,500 of Wife's attorney fees, which totaled $5,790, as a sanction for his contempt. Husband now appeals.

---

[3] Husband's life insurance application submitted to John Hancock, which was admitted as Respondent's Exhibit B, reflected that his net worth was greater than the amount that he owed Wife.

# Decision

On appeal, Husband challenges the trial court's conclusion that he was required to pay interest on the unpaid balance of Wife's settlement judgment. In addition, he argues that the trial court abused its discretion when it found that he was in contempt of court for failing to obtain life insurance and when it ordered him to pay Wife's attorney fees as a sanction for that contempt of court. We will address each of these issues in turn.

## 1. Interest

First, Husband asserts that the trial court erred when it concluded that he was required to pay interest on the unpaid balance of Wife's settlement judgment. He argues that the dissolution decree provided that he must pay interest only in the event that he makes an untimely or incomplete monthly installment payment. Alternatively, he contends that Wife should be barred from receiving interest on the judgment balance under the equitable doctrine of laches because she waited two years after the trial court issued the dissolution decree to petition the trial court to clarify its terms regarding interest.

Preliminarily, we must note that when a party asks a court to clarify a settlement agreement, the court's task is one of contract interpretation. *Ryan v. Ryan*, 972 N.E.2d 359, 363 (Ind. 2012). Unless the terms of the agreement are ambiguous, we will give them their plain and ordinary meaning and deem them conclusive. *Id*. at 364. Terms are not ambiguous just because the parties

disagree as to their interpretation. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006)). On appeal, our standard of review is de novo. *Id.*

[17] In support of his argument that interest should accrue under the decree only if he makes an incomplete or untimely monthly installment payment, Husband cites to *Van Riper v. Keim*, 437 N.E.2d 130, 132 (Ind. Ct. App. 1982). There, we held that "a lump sum division of property, payable in installments, does not bear interest on the unpaid balance, unless, and until, an installment is delinquent *or unless the decree specifically orders that the sum bears interest.*" *Id.* (emphasis added). However, we do not find *Van Riper* on point because the decree here fits within *Van Riper*'s exception as it *does* order that the sum of Wife's judgment bears interest. Specifically, the dissolution decree provided that: "Wife is entitled to legal interest rate *on any unpaid balance of this judgment.*" (App. 36) (emphasis added). On its face, the plain language of the provision explicitly established that: (1) Wife is entitled to legal interest rate; and (2) this interest rate applies to the balance of the judgment. The provision omits any reference to Husband's monthly payments. Accordingly, we conclude that the trial court did not err when it ruled that interest accrued on the unpaid balance of Wife's judgment rather than Husband's monthly payments.

[18] Nevertheless, Husband argues that Wife should be barred from receiving interest on the balance of the judgment under the equitable doctrine of laches. He contends that it is not equitable to make him pay interest because if he had known earlier that the balance of the judgment would accrue interest, he could

have paid the judgment in a lump sum or re-financed the balance to obtain a lower interest rate.

[19] We need not address this argument because laches is an affirmative defense that Husband did not assert at the trial level. *Huff v. Huff*, 892 N.E.2d 1241, 1249 (Ind. Ct. App. 2008). Under Indiana Trial Rule 8(C), a party seeking the benefit of an affirmative defense must raise and specifically plead that defense or it is waived. *Willis v. Westerfield*, 839 N.E.2d 1179, 1185 (Ind. 2006). Husband did not raise laches in his response to Wife's motion to clarify or at the hearing on the motion. Accordingly, we conclude that he has waived his argument for appeal, and we will not address it. *See Reel Pipe & Valve Co., Inc. v. Consolidated City of Indianapolis-Marion Cnty.*, 633 N.E.2d 274, 280 (Ind. Ct. App. 1994) (waiving a laches argument for failure to raise it as an affirmative defense), *trans. denied*, *cert. denied*.

## 2. Contempt

[20] Next, Husband argues that the trial court abused its discretion when it found him in contempt of court for failing to obtain court-ordered life insurance. He asserts that the trial court violated his right to due process by failing to notify him of the facts underlying his alleged contempt prior to the contempt hearing. Alternatively, he contends that there was no evidence that his disobedience of the trial court's order was "willful," as is required for a finding of contempt.

[21] The determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court. *Williams v. State ex. rel. Harris*, 690

N.E.2d 315, 316 (Ind. Ct. App. 1997). We will reverse the trial court's determination only if the court has abused its discretion. *Id.* A trial court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.*

[22] There are two types of contempt: direct and indirect contempt. *In re Adoption of A.A.*, 51 N.E.3d 380, 385 (Ind. Ct. App. 2016), *reh'g denied.* Indirect contempt, such as the trial court found here, is defined as "willful disobedience of any lawfully-entered court order of which the offender had notice." *Id.* The order must have been so clear and certain that there could be no question as to what the party was required to do, or not do, and whether the order was violated. *Id.* "'A party may not be held in contempt for failing to comply with an ambiguous or indefinite order.'" *Id.* (quoting *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005)).

[23] Husband asserts that the trial court violated his due process rights when it found him in contempt at the October 26, 2015 hearing because it did not follow the procedural requirements for finding a person in contempt of court. Specifically, he claims that, although the trial court entered an order on Wife's verified motion for rule to show cause prior to the October 26 contempt hearing, it did not properly advise him of the facts underlying her contempt allegation.

[24] As Husband argues, indirect contempt hearings "'require an array of due process protections, including notice and the opportunity to be heard.'" *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 737-38 (Ind. Ct. App. 2014) (quoting

*Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010)). Due process protections for indirect contempt proceedings are codified in INDIANA CODE § 34-47-3-5, which provides:

> (a) In all cases of indirect contempt[], the person charged with indirect contempt is entitled:
>
>> (1) before answering the charge; or
>>
>> (2) being punished for the contempt;
>
> To be served with a rule of the court against which the contempt was alleged to have been committed.
>
> (b) The rule to show cause must:
>
>> (1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;
>>
>> (2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and
>>
>> (3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

[25]  In response to Husband's argument, we first must note that a party who fails to raise an argument at the trial level waives that argument on appeal. *McKibben v. Hughes*, 23 N.E.3d 819, 828 (Ind. Ct. App. 2014) (citing *Breneman v. Slusher*, 768 N.E.2d 451, 463 (Ind. Ct. App. 2002) ("An appellant who presents an issue for the first time on appeal [] waives the issue for purposes of appellate review.")). Because Husband failed to argue at the October 26 hearing that he was without

knowledge of the allegations against him, we therefore must conclude that he waived his argument for appeal. *See id.*

[26] Waiver notwithstanding, we do not find merit in Husband's argument. In *Stanke v. Swickard*, 43 N.E.3d 245, 248 (Ind. Ct. App. 2015), we noted that:

> Strict compliance with the rule to show cause statute may be excused if it is clear the alleged contemnor had clear notice of the accusations against him, for example because he received a copy of an original contempt information that contained detailed factual allegations, *or* if he appears at the contempt hearing and admits to the factual basis for a contempt finding.

(Emphasis added). Here, it is clear that Husband had notice of the accusations against him. He appeared at the contempt hearing and admitted to the factual basis for the trial court's contempt finding—that he had failed to obtain adequate life insurance. In addition, one of his witnesses, Brunette's employee, testified solely regarding Husband's attempts to obtain life insurance. In light of these factors, we conclude that the trial court did not violate Husband's due process rights by failing to inform him of the factual circumstances underlying his contempt allegation as it is clear that he had notice of the factual circumstances.

[27] Alternatively, Husband argues that the trial court abused its discretion when it determined that he "willfully disobeyed" the dissolution decree. He contends that, even though he did not obtain life insurance, he was prevented from doing so by his health. He also notes that he attempted to comply with the trial court's order by securing Wife's judgment through other methods, including

listing Wife as the beneficiary of his pre-existing life insurance policy and his net estate.

[28] As stated above, willful disobedience of any lawfully-entered court order of which the offender has notice constitutes indirect contempt. *In re Adoption of A.A.*, 51 N.E.3d at 385. Our supreme court has previously explained that "'a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully'" is "'[c]rucial to the determination of contempt.'" *Steel-Giri v. Steele*, 51 N.E.3d 119, 129 (Ind. 2016) (quoting *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012)). "'When a person fails to abide by a court's order, that person bears the burden of showing that the violation was not willfull.'" *Wilson v. State*, 988 N.E.2d 1211, 1219 (Ind. Ct. App. 2013). The determination of whether a person is in contempt "permits the trial court to consider matters which may not, in fact cannot, be reflected in the written record." *Witt*, 964 N.E.2d at 202-03. This is because the trial court possesses unique knowledge of the parties before it and is in the best position to determine whether a party's disobedience was done willfully. *Id.* at 203. Accordingly, we will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding. *Wilson*, 988 N.E.2d at 1218.

[29] While Husband presented evidence that he attempted to obtain life insurance within the limits created by his health issues, he also admitted that he had been offered a life insurance policy that he chose not to accept because, even though he could afford the policy, he considered the monthly premium cost a "waste of assets." (Tr. 87). In addition, although that premium was expensive, the cost

was based on his application for a policy worth $500,000. As Wife notes, the premium would not have been as expensive for a policy worth the balance of her judgment of $272,020.78. In light of this evidence, we conclude that the trial court did not abuse its discretion in determining that Husband's disobedience of the dissolution decree was willful and that he, therefore, was in contempt of court.[4]

### 3. Attorney Fees

[30] Finally, Husband argues that the trial court abused its discretion when it ordered him to pay a portion of Wife's attorney fees as a sanction for his contempt of court. He claims that the trial court was required to give him the opportunity to purge himself of contempt before sanctioning him, but it did not do so.

[31] A trial court has inherent power to fashion an appropriate punishment for disobedience of its order. *MacIntosh v. MacIntosh*, 749 N.E.2d 626, 631 (Ind. Ct. App. 2001), *trans. denied.* We have previously held that "'[w]ithout regard to economic resources, once a party is found in contempt, the trial court has the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions, including the award of attorney's fees.'" *In re Paternity of Pickett*, 44 N.E.3d 756, 770-71 (Ind. Ct. App.

---

[4] Notably, Husband's other attempts to secure Wife's judgment also failed to comply with the intent of the trial court's order as he did not present any evidence that Wife's status as his beneficiary under his pre-existing life insurance policy and his will was irrevocable. Nor did he present evidence that the value of the pre-existing life insurance policy was sufficient to cover the entire balance of Wife's judgment.

2015) (quoting *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1222 (Ind. Ct. App. 2002) (internal quotations omitted)).

[32] In support of his argument, Husband quotes *Stanke*, where we stated that "a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt." *Stanke*, 43 N.E.3d at 249. However, Husband ignores the context of that statement in *Stanke*. In full, we held that:

> [A] jail sentence for civil contempt must be coercive or remedial rather than punitive in nature. To avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt.

*Id.* Our emphasis in this passage was that a sanction for contempt may not be purely punitive in nature. *Id.* Thus, in the case of a sanction of imprisonment, the sanctioned party must be offered the opportunity to purge the contempt to prevent the sanction from being purely punitive. *Id.* We did not state that a party must be offered an opportunity to purge contempt when the purpose of the sanction is compensatory rather than punitive. *See id.* Nor has Husband directed us to any such precedent. Here, the sole purpose of the trial court's sanction was to partially compensate Wife for a portion of the attorney fees she accrued attempting to enforce her rights under the dissolution decree, rather than to punish Husband. Accordingly, we conclude that the trial court did not abuse its discretion in requiring Husband to pay the fees.

[33]     We affirm.

Kirsch, J., and Riley, J., concur.