ATTORNEY FOR APPELLANT
JOHN WITT AND HYDROTECH CORP.
Mark E. Shere
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
JACK R. JAMES
Rosemary G. Spalding
Allison Wells Gritton
Spalding & Hilmes, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
JAY PETROLEUM, INC.
George M. Plews
Christopher J. Braun
Stephanie T. Eckerle
Josh S. Tatum
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

---

## In the
## Indiana Supreme Court



FILED
Mar 21 2012, 11:24 am

CLERK
of the supreme court,
court of appeals and
tax court

---

No. 38S02-1110-CV-608

JOHN WITT,
HYDROTECH CORP., AND
MARK SHERE

*Appellants/Plaintiffs,*

v.

JAY PETROLEUM, INC. AND
JACK R. JAMES

*Appellees/Defendants.*

---

Appeal from the Jay Superior Court, No. 38D01-0712-MI-4
The Honorable Mark E. Spitzer, Special Judge

---

On Petition to Transfer from the Indiana Court of Appeals, No. 38A02-0912-CV-1290

---

**March 21, 2012**

**Dickson, Justice.**

John Witt, HydroTech Corp., and attorney Mark Shere were held in contempt of court for violating the terms of a temporary restraining order. We granted transfer and affirm the trial court.

This contempt holding arises from protracted litigation in a lawsuit over the costs of an environmental cleanup.[1] John Witt purchased a property that had for many years been the site of a gaso-

---

[1] A thorough explanation of the facts is available in the Court of Appeals opinion. Witt v. Jay Petroleum, Inc., 948 N.E.2d 824, 827–34 (Ind. Ct. App. 2011).

line filling station. Witt never used the property as a gas station, but the underground storage tanks ("USTs") that had supplied the former gas pumps remained in the ground on the property. When it was discovered that one or more of the tanks had leaked petroleum chemicals into the ground, Witt notified the Indiana Department of Environmental Management ("IDEM") and contracted with HydroTech to remove the USTs and perform the cleanup in accordance with IDEM's standards. Witt also retained attorney Mark Shere to pursue claims against the previous landowners for damage to the property and the costs associated with the cleanup. Jay Petroleum, Inc. ("Jay Petroleum") and Jack James were among the defendants named in that suit.

Several months into the suit, and after an initial discovery conference, Jay Petroleum sent a letter to Shere's office, addressed to Witt, requesting seven days advance notice of the removal of the USTs. The removal of the USTs was particularly relevant to the litigation because the testing of the exposed earth around and beneath the USTs could reveal the nature of the environmental damage and, perhaps, which of the defendants would be liable. The window for gathering the necessary soil samples was relatively short and contemporaneous to the exposing of the dirt surrounding each UST. Consequently, Jay Petroleum sought notice of the USTs' removal in order to have its own environmental consultant present when HydroTech extracted the USTs. Shere, however, was out of town and did not see the letter until June 24, 2008. Shere called Jay Petroleum's attorney, Christopher Braun, and Braun returned the call the following day, but the two did not speak directly until the morning of June 26, 2008, at which time the removal of the USTs was well underway. The conversations between Shere and Braun left the parties at an impasse. Jay Petroleum insisted on having its environmental consultant on site, but Witt would not agree unless Jay Petroleum revealed what soil testing it planned to conduct or agreed to stipulations regarding the samples that would limit Jay Petroleum's options at trial. The communication between the parties at this point was less than civil, and neither would yield. Nevertheless, Jay Petroleum sent its environmental consultant to the site, but Witt refused to allow the consultant onto the property. At the end of the day, Jay Petroleum informed Witt that it would seek a temporary restraining order ("TRO") and preliminary injunction to stop the removal of the USTs.

The following morning, Jay Petroleum filed its motion for a TRO. Braun presented argument to the trial court in-person and Shere, on behalf of Witt, participated in the TRO hearing via

2

phone. At the conclusion of the hearing the judge informed them that the court was granting Jay Petroleum's motion. The TRO entered by the court declared, in relevant part:

> The Court hereby orders, adjudges and decrees that John [Witt] . . ., and all persons acting in concert and participation with [him], including the . . . environmental consultant, HydroTech, Inc., are now enjoined and restrained until further order of this Court as follows, from:
>
>> 1. from [sic] conducting UST removal, soil excavation, or other environmental investigation and remediation activities on the Property until the Court can schedule a preliminary injunction hearing to [sic] at which all parties will be provided notice of Jay Petroleum's request that its consultant, QEPI, shall be allowed to observe the UST removal activities and be allowed to collect split samples[.]

Order Granting Def. Jay Petroleum's V. Mot. for TRO, Appellants Witt's and Shere's App'x at 50–51. Immediately after the hearing, Shere contacted Witt and HydroTech and informed them that the court had entered a TRO enjoining work on the site until a preliminary injunction hearing could be held. During these conversations, Shere and HydroTech discussed whether the open UST pits should be backfilled. HydroTech expressed its concern that the site would be unsafe unless the holes were backfilled. Shere and HydroTech each interpreted the TRO to permit backfilling of the open UST pits. Additionally, Shere and HydroTech decided to continue to obtain further sampling on one of the exposed UST pits. Shere told HydroTech that he thought this action was permissible under the terms of the TRO, but Shere directed that the samples taken that day should not be tested without permission from the trial court. HydroTech took the remaining samples and commenced backfilling the holes by 11 a.m. At approximately 1:45 p.m., a Jay County Sheriff's deputy served a copy of the TRO at the site. After the deputy departed, HydroTech continued to backfill the holes until approximately 3 p.m. at which time two Sheriff's deputies arrived and instructed that all work should cease.

On July 2, 2008, at the outset of the hearing on the preliminary injunction, Jay Petroleum filed the motion for contempt of court. During the hearing, both parties introduced evidence regarding the motion for contempt despite the trial court's admonition that the hearing was limited to the preliminary injunction. The trial court issued the preliminary injunction but specifically deferred ruling on the motion for contempt. A hearing on the motion for contempt was held November 9, 2009, at which all parties declined the trial court's invitation to offer any further evidence. Counsel instead relied on the evidence presented at the preliminary injunction hearing in their briefs and ar-

3

guments before the court. The trial court held Witt, HydroTech, and Shere in contempt and held them jointly and severally liable for $108,487.32 in costs and attorneys' fees.

On appeal, Witt and Shere (a) challenge the propriety of the trial court's TRO and modified preliminary injunction and (b) contend that the trial court abused its discretion in ruling on the contempt motion and in determining the sanction imposed. HydroTech also appeals, claiming that the trial court abused its discretion by holding it in contempt because it relied on Shere for its understanding of the TRO.

A party that is willfully disobedient to a court's order may be held in contempt of court. City of Gary v. Major, 822 N.E.2d 165, 170 (Ind. 2005). The order must be "clear and certain" in its requirements. *Id.* It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard. *Id.* at 171. "We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding." *Id.* Witt and Shere contend that the trial court's finding of contempt was based upon a "cold record" and thus that we should review the finding *de novo*. We disagree. "[C]ontempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." *Id.* at 169 (citing Hopping v. State, 637 N.E.2d 1294, 1297 (Ind. 1994)). The trial court has the inherent power to "maintain[] its dignity, secur[e] obedience to its process and rules, rebuk[e] interference with the conduct of business, and punish[] unseemly behavior." *Id.* (citing State v. Shumaker, 200 Ind. 623, 640–41, 157 N.E. 769, 775 (1927)). Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully. *Id.* at 170 ("In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order."); In re Perrello, 260 Ind. 26, 29, 291 N.E.2d 698, 700 (1973) ("The *willful* disobedience of a court order can constitute indirect . . . contempt. However, the act must be done willfully and with the intent to show disrespect or defiance." (citations omitted)); Meyer v. Wolvos, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999) ("When a person fails to abide by a court's order, that person bears the burden of showing that the violation was not willful."). The determination of whether to find a party in contempt permits the trial court to consider matters which may not, in fact cannot, be reflected in the written record. The trial court possesses unique knowledge of the parties before it and is in the best position to deter-

4

mine how to maintain its "authority, justice, and dignity" and whether a party's disobedience of the order was done willfully.

Witt and Shere assert that the TRO was issued "under an incorrect legal standard" and that this "moots" the finding of contempt for violating its terms. Appellants Witt's and Shere's Br. at 31. We disagree. An order of the court is only unenforceable when the court lacked jurisdiction.[2] If, in the valid exercise of its jurisdiction, a court issues an erroneous order, that order must be obeyed. Major, 822 N.E.2d at 169–70. "The only remedy from an erroneous order is appeal and disobedience thereto is contempt." *Id.* at 170 (quoting Carson v. Ross, 509 N.E.2d 239, 243 (Ind. Ct. App. 1987), *trans. denied*). Recognizing this, Witt and Shere contend that the TRO and preliminary injunction are appealable as of right. *See* Ind. Appellate Rule 14(A)(5). A preliminary injunction is appealable as of right. A TRO is not. *See id.*; *see also* State ex rel. Bd. of Med. Registration & Examination v. Hayes, 228 Ind. 286, 288, 91 N.E.2d 913, 913 (1950) (stating that a the granting or denial of a restraining order is not appealable). Regardless, such appeal must be filed "within thirty (30) days" after the entry of the order into the record. Ind. App. R. 14(A). This was not done. Because of procedural default, the validity of the TRO and preliminary injunction cannot be challenged in this appeal.

Contending that the trial court abused its discretion in finding and punishing the contempt, Witt and Shere raise several arguments, the substance of which is that their disobedience was not willful because HydroTech's actions did not violate the terms of the TRO.

We think the terms clearly indicate that the trial court was ordering the work on the property to cease until a hearing could be held. Witt and Shere assert that a "catch-all" phrase could have been included in the TRO to ensure that there was a complete work stoppage. While this may have improved the clarity of the order, we find that its omission did not render the TRO ambiguous. The court's order explicitly enjoined and restrained Witt, Shere, and Hydrotech from "soil excavation, or other environmental investigation and remediation activities." Order Granting Def. Jay Petroleum's V. Mot. for TRO, Appellants Witt's and Shere's App'x at 50–51. We conclude that this was suffi-

---

[2] Witt and Shere do not challenge the trial court's jurisdiction with respect to the issuance of the TRO and preliminary injunction.

ciently clear and certain to unambiguously direct the cessation of all further activities by Witt, Shere, and Hydrotech at the site. This is not diminished by the contrary subjective beliefs of Shere and HydroTech that the TRO did not prohibit collecting soil samples and backfilling the newly opened pits. Collecting further soil samples was unquestionably contrary to the trial court's order. And if backfilling was believed to be the only possible way to adequately provide for public safety, or to be possible without compromising the integrity of further soil testing activities, permission could have been, but was not, sought from the trial court. Instead, Witt and Shere unilaterally authorized HydroTech to collect the samples and backfill the holes. Appellants Witt's and Shere's App'x at 374. The trial court did not abuse its discretion by holding them in contempt of court for doing so.

Witt and Shere also contend that, if this Court upholds the judgment for contempt, the trial court abused its discretion in determining the sanction for contempt. The sanction imposed by the trial court excluded from trial any evidence gathered on June 27, 2008, after entry of the TRO and awarded monetary damages consisting of a portion of the costs and attorneys' fees associated with the contempt judgment. Witt and Shere offer little argument as to why the soil samples gathered in violation of the TRO should not be excluded from use at trial. Rather, they contend that the trial court abused its discretion by using the preliminary injunction hearing as the basis for the monetary award because this resulted in substantial attorneys' fees that are "inconsistent with the legal work that was actually and reasonably necessary to establish" contempt. Appellants Witt's and Shere's Br. at 61.[3]

The imposition of sanctions "to compensate the other party for injuries incurred as a result of the contempt" is within the discretion of the trial court. Major, 822 N.E.2d at 172. The presumption favors the trial court, and thus we review the award of damages for an abuse of discretion and we will reverse only when there is no evidence to support the award. *Id.* "In determining an amount of damages the trial court may take into account 'the inconvenience and frustration suffered by the aggrieved party . . . .'" *Id.* (alteration in original) (quoting Cowart v. White, 711 N.E.2d 523, 532 (Ind. 1999)). We do not think the trial court abused its discretion here. As the trial court noted,

_____

[3] HydroTech's separately briefed argument regarding damages is essentially the same, contending that the costs and attorneys' fees would have been "incurred irrespective of the contempt." Appellant Hydro-Tech's Br. at 46.

6

the parties chose to rely on the evidence presented at the preliminary injunction hearing in their briefs relating to the motion for contempt. Order on Fee Pets., Appellants Witt's and Shere's App'x at 92 n.1. At the contempt hearing, the trial court provided opportunity for the parties to present evidence, Witt and Shere declined, again choosing to rely on the evidence previously presented. Tr. at 871.

Witt and Shere further contend that, if the preliminary injunction hearing is the proper basis for the fee award, the trial court abused its discretion by not specifically apportioning the attorneys' fees so as to impose fees only for those portions of the preliminary injunction hearing that provided evidence relevant to the contempt judgment and excluding apportionment of fees related to the other parts of the hearing. We initially observe that the trial court's fee award reflects that it carefully reviewed the amount requested in the defendants' fee petition, reducing the amount requested by nearly one-third. The trial court reduced the rate applied to attorney Braun from the actual rate to a standard rate; reduced the fees requested by James from the preferred rate to the actual rate; excluded costs and fees associated with the TRO hearing; and excluded all Westlaw charges. Order on Fee Pets., Appellants Witt's and Shere's App'x at 92–94. Although the awarded fees were incurred during and in preparation for the July 2, 2008, hearing on Jay Petroleum's request for preliminary injunction, this does not preclude the possibility that the trial judge concluded that the preliminary injunction hearing itself was substantially a result of the contemptuous litigation conduct of Witt and Shere. The trial court noted that the evidence pertaining to the preliminary injunction and the contempt was "virtually the same." *Id.* at 92 n.1. We are not persuaded that the trial court abused its discretion in finding contempt and calculating the costs and fees based primarily on the evidence from the preliminary injunction hearing.

Finally, Witt and Shere contend that imposing joint and several liability was inappropriate because it "imputed 'willfulness' to each of the parties despite their different roles." Appellants Witt's and Shere's Br. at 57. We disagree for two reasons. First, the trial court had already found willful disobedience to its order in finding contempt. The willfulness was not "imputed" but actual, as explained above. Second, the nature of the relationship between Witt and Shere, that of client and attorney, and the mutual decision to instruct HydroTech to proceed rendered their actions practically indistinguishable. They were, in effect, joint tortfeasors. *See* Bottoms v. B & M Coal Corp.,

405 N.E.2d 82, 90 (Ind. Ct. App. 1980) (upholding joint and several contempt damages against individuals that participated in an organized violation of a court order), *reh'g denied*, *trans. not sought*; *see also* Vt. Women's Health Ctr. v. Operation Rescue, 617 A.2d 411, 416 (Vt. 1992) (citing NLRB v. Laborers' Int'l Union of N. Am., 882 F.2d 949, 955 (5th Cir. 1989)) ("Generally, those who act in concert to violate a court order are jointly and severally liable for resulting damages."). The trial court did not abuse its discretion by holding Witt and Shere jointly and severally liable.

HydroTech separately contends that its actions were not willfully disobedient, and thus the trial court abused its discretion by holding it in contempt. HydroTech asserts that, because it relied first on Shere's explanation of the terms of the TRO via phone and then on Shere's interpretation, as counsel, of the TRO after the paper copy was served, its actions in taking the soil samples and backfilling the holes were not willful disobedience. We disagree. It is undisputed that HydroTech was made aware of the fact that the trial court had entered an order enjoining work on the site *before* the additional samples were taken and backfilling commenced. Tr. at 555, 557; *see also id.* at 566 ("Q: Did Mr. Shere explain to you what the Court's Order provided? A: Yes he did."). At this point, HydroTech's project manager made his own decision regarding what work he could continue on the site despite the trial court's order, *id.* at 555 ("I didn't interpret [the TRO] as a stop to backfilling to secure the site."), and then took that action. After being served with a paper copy of the TRO, HydroTech continued to backfill despite clear concern that this action was contrary to the terms of the TRO. *Id.* at 613 ("I asked [the sheriff's deputy] if he interpreted the Order as a restriction to backfilling."). We recognize that HydroTech, at least with respect to backfilling, was concerned with the structural integrity of the property and the safety of the public, but such concerns should have been raised with the trial court. A party acts at their peril in applying their subjective interpretation to the order of the court. *See* Major, 822 N.E.2d at 169–70 (quoting Carson, 509 N.E.2d at 243) ("A party must follow an erroneous order."). The trial court did not abuse its discretion in holding HydroTech in contempt.

### Conclusion

We affirm the judgment of the trial court holding Witt, Shere, and HydroTech in contempt, determining the sanction, and imposing it jointly and severally.

8

Shepard, C.J., and David, J., concur.

Rucker, J., dissents with separate opinion in which Sullivan, J., concurs.

**Rucker, J., dissenting.**

In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order. See Ind. High Sch. Athletic Ass'n v. Martin, 765 N.E.2d 1238, 1241 (Ind. 2002). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. See id. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. City of Gary v. Major, 822 N.E.2d 165, 170 (Ind. 2005). Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith. Id.

Here, the temporary restraining order that plaintiffs were alleged to have disobeyed dictated in relevant part that Witt and HydroTech were enjoined "from conducting UST removal, soil excavation, or other environmental investigation and remediation activities . . . ." Joint App. at 50-51. Importantly, as the Court of Appeals noted, defendants drafted the order and it did not compel plaintiffs to "'cease and desist' all work activities . . . ." Witt v. Jay Petroleum, Inc., 948 N.E.2d 824, 841 (Ind. Ct. App. 2011). Plaintiffs argue and the record supports that the backfilling of the sites was needed to maintain safety and address groundwater issues. The pits were several feet in width and depth, and the day before the trial court issued the order, HydroTech had pumped out several thousand gallons of groundwater. In essence although the restraining order clearly enjoined certain environmental investigation and remediation activities, it did not prohibit activity to ensure that the site would not pose a threat to public safety. In my view a finding of willful disobedience of the restraining order on the basis of HydroTech's backfilling of the pits cannot be sustained on the facts before us.

As for the soil samples, the record is unclear whether they were taken from the site before or after the restraining order was issued. And further, the record is silent on whether this soil was actually tested or whether Witt would have used any such test results as evidence in the case. Essentially there was insufficient evidence before the trial court to support a finding of contempt based on plaintiffs' soil sampling activities.

In the end I agree with the Court of Appeals that plaintiffs' conduct did not constitute a willful violation of the terms of the temporary restraining order. I therefore respectfully dissent and would reverse the judgment of the trial court.

Sullivan, J., concurs.