## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 10:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Joachim
Mann Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jonathan R. Deenik
Deenik Law, LLC
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Marriage of:

Brent R. McIntosh,

*Appellant-Petitioner,*

v.

Catherine B. McIntosh,

*Appellee-Respondent.*

February 28, 2018

Court of Appeals Case No.
41A04-1710-DR-2410

Appeal from the Johnson Superior
Court

The Honorable Marla K. Clark,
Judge

Trial Court Cause No.
41D04-1411-DR-684

**Najam, Judge.**

## Statement of the Case

[1]    Brent R. McIntosh ("Husband") appeals the trial court's order to show cause.

Husband raises two issues for our review, which we restate as the following

issue: whether the trial court abused its discretion when it found him in contempt.

We affirm.

## Facts and Procedural History

Husband and Catherine McIntosh ("Wife") were married on June 18, 1977. On November 5, 2014, Husband filed a petition for dissolution of the marriage. During the course of the dissolution proceedings, Husband, who had previously been employed as a physician by American Health Network ("AHN"), discovered that AHN had overpaid him and that he owed AHN $299,632. The parties entered into a Final Settlement Agreement, which the trial court incorporated into its Decree of Dissolution issued on March 15, 2016. The Final Settlement Agreement provided, in relevant part, as follows:

> Husband shall be solely responsible for the American Health Network Debt which at the date of filing was Two Hundred and Ninety-Nine Thousand Six Hundred and Thirty-Two Dollars ($299,632.00). Husband may pay that debt either directly or indirectly by reducing his salary[ or] reducing potential benefits and contributions. If Husband has not paid, or entered into a payment arrangement with AHN to repay[,] the debt within one (1) year of this Order, or if the debt is forgiven before commencement of any payments, then Husband shall pay to [W]ife the sum of Five Thousand Dollars ($5[,]000.00) a month for a period of five (5) years. The payments shall be in the form of maintenance to Wife and shall terminate upon Wife's death.

> On an annual basis, Husband shall notify Wife of his attempts (and provide documentary proof of the same), the amount he

was required to pay, if any, and the reduction of the debt. Should Husband make no attempts to reduce the debt for a period of more than 1 (one) year, then Husband shall have to pay Wife the balance of what is owed under the maintenance provision as detailed above. In the event Husband is only required to pay a portion of the debt, or a portion is forgiven, he shall make the maintenance payments in an equal ratio to the amount that has been forgiven as detailed above.

Appellant's App. Vol. II at 20.

[4] On May 31, 2017, Wife moved the court for a rule to show cause on the grounds that Husband had not repaid the debt or entered into a payment arrangement with AHN and, thus, that Husband was required to make monthly payments of $5,000 to Wife pursuant to the Final Settlement Agreement, which Husband had not done. Further, Wife alleged that Husband had failed to provide Wife with any documentary proof of his attempts to pay the debt or the amount he was required to pay.

[5] The trial court held a hearing on the motion on August 3, 2017. Neither Wife nor Husband testified at the hearing. Instead, their attorneys made their arguments to the trial court. Wife's attorney asserted that Husband had not entered into a repayment agreement with AHN, he had not repaid the debt, and he had not provided any documentary proof to Wife that he had taken steps to pay off the debt. Wife's attorney further stated that Husband was required to begin paying Wife the maintenance payments as of March 2017.

[6]     Husband's attorney contended that Husband had taken the following steps in an attempt to pay down the debt: he had reduced his salary for three months before he had left AHN; he had left behind his long-term equity plan when he had terminated his employment with AHN, the balance of which was $38,827.33; and he had left AHN his deferred compensation plan, the balance of which was $25,587.57. Husband's attorney also asserted that Husband had requested documentation numerous times from AHN on the amount he had repaid, but he had been unable to obtain that documentation because AHN had been bought out.

[7]     To support his position, Husband's attorney moved to admit an undated letter from AHN's Chief Financial Officer as evidence, which the trial court admitted. That letter provided that Husband's "balance in the Long Term Equity Plan is $38,827.33. This balance will be paid out in equal installments over a period of 5 years upon retirement from AHN." Ex. at 5. It further provided that Husband "had participat[ed] in the Deferred Compensation Plan in 2003 and 2004. Your balance in this plan as of February 28, 2015[,] is $25,587.57. This balance will be paid out in equal installments over 3 years." *Id*. Finally, the letter provided that "Your Due from physician balance as of Jan[uary] 31, 2015[,] is $299,632. This is a cumulative balance representing earned physician compensation being lower than paid compensation and is owed back to AHN." *Id*.

[8]     The trial court issued its order to show cause on August 8. In its order, the trial court found that "[t]here is no dispute that the debt has not been repaid and that

payment arrangements have not been made." Appellant's App. Vol. II at 43. Further, the trial court found that the "maintenance provision of the Settlement Agreement is not contingent on *why* the debt was not repaid. Rather, it states only that the maintenance requirement is triggered if the AHN debt was not repaid or payment arrangements entered within one year, by March 15, 2017." *Id*. (emphasis in original). The trial court also found that

> [e]ven if Husband's intent is to satisfy a portion of the debt by applying earned benefits, there is no evidence that AHN has accepted this as a payment arrangement. The letter he entered into evidence shows that the amount of the AHN debt has remain[ed] unchanged since the Settlement Agreement was entered.

*Id*. Based on the Settlement Agreement's language, the trial court found that Husband was in contempt and ordered him to begin paying the maintenance payments to Wife, to pay the missed payments to Wife by December 31, 2017, and to pay Wife's attorney's fees.

[9] On August 17, 2017, Husband filed a motion to correct error in which he alleged that the trial court had erred when it found that the maintenance provision had been triggered because he had made payments on the debt and because AHN had kept the balance of his long-term equity plan and his deferred compensation plan. He also contended that the trial court erred when it found him in contempt because he did not "willfully refuse[] to comply" with the order and because property settlement agreements may not be enforced by

contempt citations. *Id.* at 46. The trial court denied Husband's motion to correct error on September 18. This appeal ensued.

# Discussion and Decision

[10] Husband contends that the trial court abused its discretion when it found him in contempt because the settlement agreement may not be enforced by contempt. He also contends that the trial court abused its discretion when it found him contempt because that finding was not supported by the evidence. We address each argument in turn.

## *Trial Court's Contempt Powers*

[11] Husband first asserts that the trial court abused its discretion when it found him in contempt because the settlement agreement may not be enforced by contempt. Specifically, Husband contends that the clause in the settlement agreement that requires Husband to pay Wife $5,000 per month is a property settlement agreement and "[p]roperty settlement agreements incorporated into a final decree of dissolution may not be enforced by contempt citation." Appellant's Br. at 9. Wife, however, asserts that the clause that provides for Husband to pay her is not a property settlement but, rather, is a maintenance payment, which can be enforced by contempt.[1]

---

[1] We note that the maintenance statute, Indiana Code Section 31-15-7-2, is not at issue here because the settlement agreement, and its apparent provision for maintenance, was created by the agreement of the parties. While a trial court only has three, limited options in ordering maintenance "[t]he parties may

[12]     We consider various factors to determine whether the clause is one for maintenance or one for property settlement. *Deel v. Deel*, 909 N.E.2d 1028, 1034 (Ind. Ct. App. 2009). The factors that indicate a payment was maintenance are: "(1) the designation as maintenance;[2] (2) provision terminating the payments upon death of either party; (3) payments made from future income; (4) provisions for termination upon remarriage; (5) provisions calling for the modification based upon future events; (6) and payments for an indefinite period of time." *Id.* On the other hand, the factors that indicate a provision was actually intended to be marital property are:

> (1) the payments are for a sum certain payable over a definite period of time; (2) there are no provisions for modification based on future events; (3) the obligation to make payments survives the death of the parties; (4) the provisions call for interest; and (5) the award does not exceed the value of the marital assets at the time of dissolution.

*Id.*

[13]     We conclude that the provision at issue here was a maintenance provision. First, the agreement itself designated that the "payments shall be in the form of maintenance to Wife[.]" Appellant's App. Vol. II at 20. Second, the provision

---

themselves provide for maintenance in settlement agreements where the court could not otherwise order it." *Voigt v. Voigt*, 670 N.E.2d 1271, 1277 (Ind. 1996).

[2] Because the designation by the parties of a particular provision as "maintenance" is not dispositive to the question of whether that provision is, as a matter of law, maintenance, the parties' are not estopped on appeal by their designations below.

specifies that Wife's entitlement to the sums "shall terminate upon Wife's death." *Id.* Third, it appears that payments to Wife would be made from Husband's future income. Fourth, there is no provision that calls for interest to be paid. Finally, there is a provision that calls for modification based on future events. In their Final Settlement Agreement, the parties agreed that Husband would pay Wife $5,000 per month for five years if Husband did not pay the AHN debt or enter into an arrangement to pay that debt. The settlement agreement further provided that,

> Should Husband make no attempts to reduce the debt for a period of more than (1) year, then Husband shall have to pay Wife the balance of what is owed under the maintenance provision as detailed above. In the event Husband is only required to pay a portion of the debt, or a portion is forgiven, he shall make the maintenance payments in an equal ratio to the amount that has been forgiven as detailed above.

*Id.* That language demonstrates that the provision allows for modification of the amount Husband is required to pay Wife based on any number of events that may occur in the future.

[14] While the provision does require Husband to pay a specific sum total to Wife over a definite period of time, which is a factor that weighs in favor of the clause describing a property distribution, that one factor alone does not overcome the numerous factors that demonstrate that the clause was intended by the parties to be a maintenance provision. As such, we hold that the provision of the Final Settlement Agreement at issue is a maintenance

provision, and "an order to pay maintenance is enforceable by contempt." [3] *Thompson v. Thompson*, 458 N.E.2d 298, 300 (Ind. Ct. App. 1984). As such, the trial court was within its discretion when it exercised its contempt authority.

### Finding of Contempt

Husband next contends that the trial court abused its discretion when it found him in contempt because the trial court's finding of contempt was not supported by the evidence. The Indiana Supreme Court has recently outlined our standard of review.

> "It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard." *Witt v. Jay Petroleum, Inc.,* 964 N.E.2d 198, 202 (Ind. 2012) (citation omitted). "We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding." *Id.* The trial court has the inherent power to "maintain[ ] its dignity, secur[e] obedience to its process and rules, rebuk[e] interference with the conduct of business, and punish[ ] unseemly behavior." *Id.*

*Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). And, "[a]s with other sufficiency matters, we will neither reweigh the evidence nor judge witness credibility." *Deel*, 909 N.E.2d at 1032.

---

[3] Husband makes no contention that maintenance provisions cannot be enforced through contempt proceedings. Husband's contention that the trial court erred when it found him in contempt relies entirely on his assertion that the agreement that he pay Wife is a property settlement agreement and that property settlement agreements cannot be enforced through contempt proceedings.

[16] Husband contends that the trial court abused its discretion when it found him in contempt because there was no evidence to support that finding. Specifically, Husband asserts that "[t]he evidence presented to the trial court was that [Husband] had been repaying the debt and had made arrangements with AHN" to repay the debt. Appellant's Br. at 8. As such, Husband contends that "[t]here is a lack of evidence" to show that Husband had disobeyed the trial court's order. *Id*. at 9.

[17] During the hearing, Husband's attorney stated that, before he left AHN, Husband "reduced his salary. They kept collections of at least three (3) months of surgeries which he performed and didn't collect any money from." Tr. Vol. II at 7. Further, he left AHN with "his Long-Term Equity Plan which is approximately thirty-eight thousand, eight hundred and twenty-seven dollars and thirty-three cents ($38,827.33)" and "his Deferred Compensation Plan of twenty-five thousand, five hundred eighty-seven dollars and fifty-seven cents ($25,587.57)" in order to repay some of the debt. *Id*. at 7-8.

[18] However, the only evidence Husband presented at the hearing was the undated letter from AHN's Chief Financial Officer, which simply provided the balances of Husband's long-term equity plan and Deferred Compensation Plan and the balance of Husband's debt, which, as the trial court found, showed that the amount due on the debt was the same amount due as stated in the Final Settlement Agreement. Husband presented no evidence that he had actually paid any of the debt or entered into an agreement with AHN to pay back the debt. Further, Husband presented no evidence that he had attempted to obtain

documentation from AHN that would indicate that he had actually paid down some of the debt. Because Husband failed to present any evidence to the trial court that he had actually paid any of the debt, that he had entered into a payment arrangement with AHN, or that he had provided documentary proof to Wife of his attempts to pay or the amount he was required to pay, the trial court did not abuse its discretion when it found him in contempt.

[19] In conclusion, the clause of the settlement agreement that required Husband to pay Wife was a maintenance provision and was enforceable through contempt. And the trial court did not abuse its discretion when it found Husband in contempt. Accordingly, we affirm the trial court's order on rule to show cause.

[20] Affirmed.

Mathias, J., and Barnes, J., concur.