# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 17 2019, 10:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan M. Young
Law Office of Jonathan M. Young, P.C.
Newburgh, Indiana

ATTORNEY FOR APPELLEE

Kelly A. Lonnberg
Stoll Keenon Ogden, PLLC
Evansville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey Nelson, <br> *Appellant*, <br><br> v. <br><br> Julie A. Nelson, <br> *Appellee*. | October 17, 2019 <br><br> Court of Appeals Case No. 19A-DR-942 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable J. Zach Winsett, Special Judge <br><br> Trial Court Cause No. 82D01-1601-DR-32 |

**Brown, Judge.**

[1]     Jeffrey Nelson ("Husband") appeals the trial court's April 18, 2019 order finding him in contempt and ordering the sale of real estate with certain amounts to be paid from the proceeds. We note that this is the fifth appeal in this dissolution action, and we affirm the trial court.

*Facts and Procedural History*

[2]     On April 28, 2012, Husband and Julie Nelson ("Wife") were married. The day before, they signed a prenuptial agreement (the "Agreement"). With respect to attorney fees, the agreement states: "Should either party retain counsel in order to enforce or prevent the breach of any provision of this Agreement, that party shall be entitled to reasonable attorney fees and costs for services rendered if such party prevails." Appellant's Appendix Volume II at 191. It also provided: "In the event of a dissolution of marriage between the parties, both Husband and Wife waive the right to receive maintenance from the other and specifically waive any right to claim maintenance from any non-marital source of income of the other." *Id.* at 188.

[3]     On January 8, 2016, Wife filed a verified petition for dissolution of marriage and a motion for provisional order requesting that she be granted temporary possession and use of certain marital property and asserting that she was a non-earning spouse and should be granted spousal support and a preliminary award of attorney fees.

[4]     On April 4 and 12, 2016, the court held a provisional hearing. On May 2, 2016, it entered a provisional order providing that Husband pay Wife's monthly rent

payment for her apartment during the pendency of the proceedings, $2,500 per month in maintenance, and $20,000 to Wife's counsel to be applied to present and prospective attorney fees. The court also ordered that Husband have temporary possession of the marital residence and pay all debts and expenses associated with it.

[5] On June 2, 2016, Wife filed a petition for declaratory judgment and a verified information for contempt. On June 27, 2016, the trial court entered an order which declared, in part, that the Agreement's definition of separate property "does not include the income produced from separate property or proceeds received from the sale of separate property" and determined that the Agreement did not preclude spousal gifts during the marriage and that the Agreement "defines property acquired by gift, whether during or before the marriage, as separate property." *Nelson v. Nelson*, No. 82A01-1607-DR-1706, slip op. at 6 (Ind. Ct. App. February 28, 2017). Husband appealed, and this Court noted that the parties agreed that Illinois law controlled the substantive issues and we affirmed the trial court. *See id.* at 2.

[6] On August 12, 2016, Wife filed a Verified Information for Indirect Contempt Against Husband alleging that he posted messages to her on her Facebook business page in violation of an order that he refrain from contacting her. On September 20, 2016, Wife filed a Verified Information for Indirect Contempt Against Husband alleging that he transferred marital property to an account in his and his daughter's names. On October 3, 2017, Wife filed an Information for Contempt and Petition for Expert and Attorney Fees, which alleged in part

that Husband abandoned the home and left it in disrepair and that it continues to deteriorate. On May 8, 2018, Wife filed an Information for Contempt and Petition for Attorney's Fees alleging in part that Husband failed to list both of the real estate properties for sale as ordered and failed to maintain the home. On May 29, 2018, Wife filed a Verified Petition for Contempt alleging that Husband refused to provide her with keys to the marital residence and removed nearly all of the furniture including the kitchen appliances and housewares.

[7] On June 4, 2018, the court held a hearing on Wife's contempt filings. On June 7, 2018, it entered an order finding Husband in contempt for failing to pay Wife's rent and provisional maintenance and failing to maintain the marital property and utilities services. The court found that Wife was entitled to additional attorney fees in the amount of $21,414.48 plus additional fees of $960 for preparation and attendance at the June 4, 2018 hearing. The court ordered a writ of attachment issued for Husband to serve forty-five days at the Vanderburgh County Jail and stated that he may purge himself by paying $27,374.48 by June 8, 2018.

[8] Wife also filed various motions and petitions requesting the trial court to interpret the Agreement and seeking other provisional relief, including additional attorney fees. The trial court has held multiple hearings and entered multiple provisional orders. Husband appealed those orders, and different panels of this Court issued memorandum decisions on the narrow issues

presented. *See Nelson v. Nelson*, No. 18A-DR-794 (Ind. Ct. App. August 9, 2018); *Nelson v. Nelson*, No. 18A-DR-248 (Ind. Ct. App. September 12, 2018).[1]

[9] Husband also appealed the trial court's June 7, 2018 order. *See In re Marriage of Nelson*, No. 18A-DR-1577, slip op. at 7 (Ind. Ct. App. January 31, 2019). This Court held that the trial court did not err in finding him in indirect contempt. *Id.* In addressing the sanctions imposed, we observed that at the time the trial court entered its order, Husband's appeal of the trial court's provisional order directing him to pay $36,000 in Wife's attorney fees and certain expert fees was still pending. *Id.* at 10-11. We observed that another panel of this Court had since issued its decision reversing the trial court's fee award based upon the language of the Agreement. *Id.* at 11 (citing *Nelson*, No. 18A-DR-248). We noted that, under the law of the case doctrine, an appellate court's

---

[1] In *Nelson v. Nelson*, No. 18A-DR-794, we addressed "[w]hether the trial court erred by ordering the sale of the parties' matrimonial home through a provisional order." Slip op. at 2. We observed that Husband's arguments on appeal were centered on the interpretation and scope of Ind. Code § 31-15-4-8 governing provisional orders during dissolution proceedings. *Id.* at 9. We held that Ind. Code § 31-15-4-8 was a procedural statute and the controversy must be governed by the law of the forum state, *i.e.*, Indiana. *Id.* We agreed with Husband that there was no motion for provisional relief pending before the trial court. *Id.* at 10. We held that the motion before the trial court was a request to stay enforcement of the Supplemental Provisional Order pending Husband's appeal. *Id.* We observed that there was no provision under Ind. Code § 31-15-4-8 authorizing the sale of marital assets while divorce proceedings were ongoing and concluded that the trial court's order instructing the parties to list their matrimonial home for sale during divorce proceedings was erroneous and reversed that order. *Id.* at 11.

In *Nelson v. Nelson*, No. 18A-DR-248, we addressed whether the trial court's provisional awards of expert and attorney fees were contrary to the terms of the Agreement. Slip op. at 2. We held that "the attorney fees provision of the Agreement, which entitles a party who has retained counsel to enforce or prevent the breach of the Agreement to payment of attorney fees by the other party *if* the first party prevails, governs Wife's request for attorney fees." *Id.* at 6. We held that "[a]s Wife has not prevailed in this ongoing action, she is not yet—if ever—entitled to the payment of her attorney fees. The trial court's award of attorney fees is therefore contrary to the terms of the Agreement." *Id.* We noted that Husband did not timely challenge previous orders and could not challenge the propriety of those previous awards of fees. *Id.* at 7 n.7. We held that Husband had not established error in the trial court's award of certain expert fees. *Id.*

determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts. *Id.* We concluded:

> Thus, to the extent that the purge amount set by the trial court here specifically includes attorney's fees that have since been determined to be unrecoverable due to the parties' prenuptial agreement, we remand to the trial court to amend its order to omit those specific fees.[2] That said, we leave it entirely to the trial court's discretion on remand to reconsider and reset the purge amount to any amount it believes necessary to coerce Husband's behavior and to compensate Wife. Understandably, the reset purge amount may be higher or lower than that previously ordered by the trial court. In sum, our review of the record reveals that Husband has repeatedly interrupted, obstructed, embarrassed, and prevented the due administration of justice in these dissolution proceedings, and the trial court has the power to do what it deems necessary to prevent further disobedience of its orders.

*Id.* at 11-12.

---

[2] We noted:

> Contrary to Husband's claims, this Court did not determine that Wife cannot recover any attorney's fees during this ongoing action. Rather, the panel reversed the trial court's $36,000 provisional award of fees and remanded for the trial court to determine what portion of that award was attributable to Wife's then current request for fees and amend the order to omit those fees only. *Nelson*, [No. 18A-DR-248, slip op. at 6-7]. Indeed, the *Nelson* panel noted that a portion of the $36,000 award was attributable to several previous awards of attorney's fees that Husband did not timely challenge, and therefore those amounts were unaffected by this Court's decision. *Id.* at [7 n.7]. Therefore, Husband would still owe any of those amounts that remain outstanding.

*Nelson*, No. 18A-DR-1577, slip op. at 11 n.6.

Meanwhile, on October 3, 2018, Wife filed an Information for Contempt and Petition for Attorney's Fees alleging Husband refused to appear at a deposition requested by her and failed to supplement his responses to requested documentation. On November 14, 2018, Wife filed an Information for Contempt and Petition for Attorney Fees alleging he had left the marital residence in disrepair and continued to allow it to deteriorate, had taken steps to interfere with the Homeowners Association's required maintenance of the home, and had failed to submit payment on expert witness fees. On November 21, 2018, Wife filed an Information for Contempt and Petition for Attorney's Fees alleging Husband had failed to pay the property taxes for 2016 and 2017, the taxes were now delinquent, and his actions were an intentional, willful, and repeated violation of the court's orders.

On November 30, 2018, the court held a hearing. After discussion and argument, Wife testified that she had about $67,000 in outstanding attorney fees. She testified that she was asking the court to enter an order to sell the Oak Trace property. At the end of the hearing, the court stated:

> What's still kind of hanging out there is whether the court can issue a partial final order or not; not a – not a bifurcated or maybe a – you know, a partial final order without having heard all of the evidence or not. I don't have to make that determination today because we didn't finish. But that's kind of a novel issue. This case is novel. We have someone who doesn't appear for court. So novel situations sometimes warrant novel outcomes.

Transcript Volume II at 110.

[12] On December 27, 2018, Wife filed a Verified Information for Contempt alleging that Husband failed to pay expert fees as previously ordered and she requested attorney fees in pursuit of the contempt.

[13] On January 16, 2019, the court held another hearing at which Wife appeared in person and by counsel and Husband appeared by counsel. Husband's counsel objected to proceeding with respect to the contempt issue in Husband's absence, and the court overruled the objection. Wife provided testimony. At the end of the hearing, the court stated that "all items having to do with the dissolution and all other pleadings that are pending will be heard on that next date, including the – the Information for Contempt and Petition for Attorney's Fees on – file marked November 21; the Verified Information for Contempt file marked December 27 – both of 2018 – Motion for Award of Expert Fees filed January 14, 2019." Transcript Volume II at 167-168. The court also stated that "with the Motion to Bifurcate withdrawn, then that's all the remaining issues, and the court certainly expects you'll elicit testimony – or put on evidence regarding everything that you didn't get to on that date . . . ." Id. at 168.

[14] On March 13, 2019, the court held another hearing at which Wife appeared in person and by counsel and Husband appeared by counsel. At the beginning of the hearing, the court stated: "This is the date and time set for a continuation of the final hearing in this matter and other various matters." Id. at 169. Husband's counsel continued to cross-examine Wife. During redirect examination, the court admitted a document titled "Summary of Purge Amount" which listed "Contempt Related Attorney's fees" as of January 31,

2019, as $25,092. Wife's Exhibit 15. Wife testified that the exhibit reflected a summary of what she was requesting as the purge amount and answered affirmatively when asked whether supporting documents were attached to the summary to demonstrate how the numbers were calculated. After redirect examination, Husband's counsel stated "[w]e're down to nine minutes" and indicated that there were a number of line items that he did not believe related to the contempt, that he wanted to go through those, and that he had other questions about issues "that I don't know that we need to get to today." Transcript Volume II at 230. The court stated: "Well, I want to rule on the remand, so whatever questions regarding that. And then any other information as for contempt – the Verified Information for Contempt of December and the Information for Contempt and Petition for Attorneys' Fees of November 21. You can keep your cross to those." *Id.* Husband's counsel stated: "We dealt with the November 21 one I think in total last time" and the court agreed. *Id.* Husband's counsel questioned Wife about the attorney fees, indicated that he had "other questions but given the time, and I know opposing counsel has somewhere to be at noon." *Id.* at 236. Wife's counsel stated: "I – I don't want to stop the – ." *Id.* Husband's counsel stated, "I would pause for today." *Id.*

[15] The court asked Husband's counsel if he had any other questions based on the "Verified Information for Contempt on December 27 or the remand issue." *Id.* at 236-237. Husband's counsel answered: "No. Obviously we don't agree with Exhibit 15 or the reading of the appellate issue but I would – I won't beat that drum too hard. I know that Your Honor knows how to read." *Id.* at 237. The

court asked: "Any other – any other additional evidence on your – on your contempts – the contempt of 12/27 of '18, which is the alleged failure to pay the expert fees? Any additional evidence?" *Id.* at 238. Counsel for each party answered: "No, Your Honor." *Id.* The court stated: "Okay. We'll show that matter is closed. I'm just trying to tie up what I can rule on. And, [Husband's counsel], you already stated the Information for Contempt and Petition for Attorney's Fees on 11/21 of '18, that's all been done; ready to rule on?" *Id.* Husband's counsel answered: "Yeah. We spent a considerable amount of time on that the last time we were here." *Id.* The court stated: "Right. Okay. Then the remand issue, that's open for the court to rule on, as well. Everyone agree on that?" *Id.* at 239. Husband's counsel answered affirmatively.

[16] Husband's counsel argued that the purge amount should be decreased because the appellate decision "talks about attorney's fees that were previously awarded that weren't subsequently appealed" and "[i]t doesn't talk about it being okay to just keep tacking on attorney's fees." *Id.* at 239. Wife's counsel argued that attorney fees related to Husband's contempt were appropriate. The court indicated it would take those matters under advisement, and "[s]how continuing testimony will be heard April 9 at 9:00 a.m. all day on final hearing and June 11 at 9:30 all day." *Id.* at 240.

[17] A chronological case summary entry dated April 5, 2019, indicates that the court held a telephonic hearing, granted Husband's motion to continue over Wife's objection, advised that Husband would not be granted any future

continuances except in extreme circumstances, and counsel selected additional hearing days of June 25, 2019, and July 12, 2019.

[18]     On April 18, 2019, the trial court entered an order which states:

> Comes now the Court, after a hearing on the following motions and issues:
>
> On Remand from the Court of Appeals of Indiana, from its January 31, 2019 Memorandum Decision;
>
> *Information for Contempt and Petition for Attorney's Fees* filed by Wife on November 21, 2018;
>
> *Verified Information for Contempt* filed by Wife on December 27, 2018;
>
> With the Wife, Julie A. Ne[ls]on present and with counsel . . . and the Husband, Jeffrey E. Nelson is not physically present, but appears by counsel only . . . and after the presentation of evidence, after taking the issues under advisement, the Court now finds and orders the following:
>
> **On Remand from the Court of Appeals January 31, 2019 Memorandum Decision**
>
> 1. The trial court previously found [Husband] in contempt of court for failure to pay spousal maintenance and attorney's fees on June 4, 2018.
>
> 2. The Court of Appeals of Indiana in *Nelson v. Nelson*, No. 18A-DR-1577 (Ind. Ct. App. Jan. 31, 2019) affirmed the finding of contempt against Jeffrey Nelson for failure to pay spousal maintenance to the Wife, but remanded to the trial court to amend its order for omit [sic] attorney's fees from the purge amount of the contempt order.

3. The court herein now restates the contempt sentencing and amends the purge amount as follows: [Husband] shall be sentenced to forty-five (45) days in the Vanderburgh Count[y] Jail, the court issues a writ of body attachment for the immediate arrest, detention, and transport of [Husband] to begin his sentence. [Husband] can purge himself of the forty-five (45) day jail sentence by the payment of $30,000 in unpaid spousal maintenance to the Wife.

***Information for Contempt and Petition for Attorney's Fees* filed by Wife on November 21, 2018;**

4. The Wife met her burden of proof that the Husband is in contempt of court for failing to pay property taxes on the marital residence as ordered on May 2, 2016.

5. The court finds that the failure to pay was willful.

6. The Husband shall be sentenced to 60 days at the Vanderburgh County Jail. The Husband can purge himself of the jail sentence by paying all property taxes due and owing, including any late fees on the 1000 Oak Trace vacant lot property and the 1220 E Hillsdale Rd residence property. The amount, according to the exhibits submitted in this matter, comes to a total of approximately $18,473.85. The taxes owed shall be paid directly to the Vanderburgh County Treasurer.

7. Additional sentencing is contained below under the heading "*Additional Sentencing*".

***Verified Information for Contempt* filed by Wife on December 27, 2018.**

8. The Wife met her burden of proof that the Husband is in contempt of court for failing to pay for the Wife's expert fees.

9. The court finds that the failure to pay was willful[].

10. The Husband is sentenced to 60 days in the Vanderburgh County Jail. The Husband has the opportunity to purge himself of the jail sentence by paying to the Wife's attorney $20,000.00. This $20,000.00 is for the purpose of the Wife's request to hire experts in connection with preparation for litigation in this matter. The Wife shall itemize all expert expenditures and produce a report upon request. Any unused portion of the $20,000.00 shall be subject to return to the Husband.

11. Additional sentencing is contained below under the paragraph heading "*Additional Sentencing*".

### Attorney Fees Request

12. The Husband shall pay contempt related attorney's fees to the [Wife] in the amount of $25,092.00. This amount is reduced to a civil judgment and can be collected upon the same way as any civil judgment.

13. In regard to the request for attorney fees from the parties, the court herein considered the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and other factors such as the behaviors of a particular party which directly led to the litigation. Some of these behaviors are outlined in the endnote below.

### Additional Sentencing

14. As part of the contempt sentencing herein for both informations for contempt that are addressed in this order, the Marital Home and vacant lot property shall be sold. Court appoints Charlie Berger as Commissioner to sell the marital residence as well as the undeveloped real estate in northern Vanderburgh County. The Commissioner shall fashion an order to allow him to list property, execute the purchase agreement and Deed, subject to approval by the court.

15. The proceeds of the sale of the home and property shall go towards the following listed in order of payment priority:

   a. Charlie Berger's outstanding fees as appointed Commissioner in this matter;
   b. Any property taxes owed on the marital residence and vacant lot property;
   c. Expert Fees of $20,000 paid directly to the Wife's present attorney;
   d. Maintenance owed to the Wife of $30,000, payable directly to Wife;
   e. Contempt related attorney's fees of $25,092.00 paid directly to the Wife's present attorney;
   f. Attorney's fees of $6407.50 paid directly to Wife's prior attorney . . . .
   g. Any remainder shall be held in trust pending further order of the court.

16. The Husband can purge himself of the sale of the home [sic] by paying all amounts listed in this Order within 14 days from the file marked date of this Order.

Appellant's Appendix Volume II at 42-44. In an endnote, the court stated:

> The Court is not issuing findings of facts and conclusions of law, but for the benefit of the parties, the Court will explain some of the reasoning behind its decision below. The facts and law referenced below are not exhaustive of all facts and/or law that the Court relied upon in reaching its decision:
>
> a. All contempt sentencing in this order is meant to be coercive and remedial in nature, and is no way meant to punish the Husband.
>
> b. The Husband's actions and inactions in this case have frustrated the aggrieved party, the Wife, to the point where

the case has not moved forward at the rate that it could have had the Husband not committed contemptuous acts.

c. The Husband has refused to participate in the proceedings in that he does not appear for proceedings, he does not participate in some discovery, [and] he ignores court orders for the payment of money and for specific performance.

d. The Husband has been found in contempt numerous times and has had writs of body attachment issued for his immediate arrest and detention.

e. The Husband is believed to be hiding out of state, out of the reach of Indiana authorities.

f. The Husband, by his sole contemptuous acts, has created a situation where this case simply cannot move forward without the forced sale of the only significant assets known to be in Indiana, the marital home and the vacant lot.

g. The court figured the contempt purge amount for back spousal maintenance as follows: (May 1, 2018 to April 1, 2019 is 12 months, 12 months x $2500 = $30,000).

h. [Wife] needs to hire experts to adequately ascertain assets of the marriage.

i. The court arrived at the total property tax amount owed thusly, from Wife's Exhibits 12 and 13 from November 30, 2019: 1220 Hillsdale Rd (2016 pay 2017 – Spring: $1465.52, Fall: $780.93, 2017 pay 2018 – Spring $608.99, Fall: $552.96); 1000 Oak Trace (2016 pay 2017 – Spring: $5947.70, Fall: 3142.95. 2017 pay 2018 – Spring $3102.14, Fall $2872.66).

j. The court recognizes the forced sale of real estate may be regarded by some as an extreme measure of a contempt sentencing. This is especially true in light of the Indiana Court of Appeals Order which reversed the trial court's prior order of a forced sale of these same properties.

k. The court distinguishes the present order as follows: The current order of the court which orders the sale of the real estate is part of a contempt sentencing, while the prior order which ordered the sale of the real estate was part of a provisional order. The trial court has narrowly defined powers, defined by statute, regarding what the court can order in a provisional order in a domestic case setting. Conversely, the trial court is vested with the inherent power to issue contempt sentences to maintain the court's authority and to administer and execute judicial power. That power is not stringently defined by statute. Simply put, the trial court has broader powers to fashion a specific remedy in a contempt sentencing than in a provisional divorce setting. The court herein does not wield its power lightly, and that power was used in this matter with the utmost caution, reservation, and restraint.

l. The court notes that the Husband does not currently reside in the home or on the property that is being ordered sold.

m. The court finds that no other adequate remedies exist to coerce the Husband to follow the court's orders. Jail sentences, which one could easily argue is [sic] a more extreme measure than the forced sale of property, clearly are inadequate as a remedy because the Husband repeatedly refuses to participate in the case or follow the orders of the court after having been sentenced to jail.

n. The court finds that it has no other options in this case but to order the sale of the real estate. The Husband's conduct in this case has been extreme. He consistently disobeys court orders and refuses to appear for any court proceedings. If the court does nothing but sentence the Husband to more of the same, i.e., jail, with an opportunity to purge if he doesn't do something or pay something, then this dissolution matter could very well never end, unless the Wife just decides to forego discovery and fairness in exchange for finality. The court herein feels that any action less than what it has ordered

here would be the court's condonation of the Husband's contemptuous behavior, and even further still, the court feels, by not issuing the present order, that it would effectively be aiding the Husband in both his contemptuous behavior.

o. This case shows why a trial court's contempt powers should be given a wide berth and not particularly defined. The order herein is a particular order, fashioned to a particular set of peculiar circumstances.

*Id.* at 45.

## *Discussion*

[19] The issue is whether the trial court erred in entering the April 18, 2019 order. Husband challenges the order to the extent it: (A) ordered the sale of real estate; and (B) determined the amounts to be paid out of the proceeds.

A. *Sale of Real Estate*

[20] Husband does not challenge the court's finding that he was in contempt. Rather, he argues that the trial court erred in ordering the sale of the real estate and that the question is governed by Indiana law. He asserts that, "[t]o the extent that the final hearing has started but not been completed, the orders of the Court are still during the provisional period." Appellant's Brief at 20. He contends that the court did not have authority to enter a bifurcated order and cites Ind. Code § 31-15-2-14. He asserts that: the trial court's order could not have been a final order as the matter had not been completed; the court did not have authority under Indiana statutory provisions because the parties did not agree to bifurcate any issue; the appealed order was issued during the

provisional period; and this Court has already held that the real estate cannot be sold during the provisional period. He asserts that, "[u]nder Indiana law, a civil contempt finding on a provisional order has limited remedies and those remedies do not include the right to order the sale of real estate." Appellant's Brief at 19 (citing *Mosser v. Mosser*, 729 N.E.2d 197 (Ind. Ct. App. 2000)).

[21] Wife argues that the trial court properly ordered the sale of the marital property upon Husband's failure to purge himself of contempt, and that she was forced to file ten separate informations for contempt. She contends that a contempt order issued during the pendency of a divorce is not a provisional order and that the court had the authority to fully enforce its order through its contempt power.

[22] Generally, "the purpose of civil contempt is to coerce action by the contemnor for the benefit of the aggrieved party." *Reynolds v. Reynolds*, 64 N.E.3d 829, 835 (Ind. 2016). "The imposition of sanctions 'to compensate the other party for injuries incurred as a result of the contempt' is within the discretion of the trial court." *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 204 (Ind. 2012) (quoting *City of Gary v. Major*, 822 N.E.2d 165, 172 (Ind. 2005)).

[23] The trial court's April 18, 2019 order, is not governed by Ind. Code § 31-15-2-14, which addresses bifurcation of issues and summary disposition orders.[3]

---

[3] Ind. Code § 31-15-2-14 provides:

> (a) The court may bifurcate the issues in an action for dissolution of marriage filed under section 2 of this chapter (or IC 31-1-11.5-3(a) before its repeal) to provide for a summary

Rather, we conclude that the order was issued pursuant to Ind. Code § 34-47-3-1, which provides in part that "[a] person who is guilty of any willful disobedience of any process, or any order lawfully issued: (1) by any court of record . . . is guilty of an indirect contempt of the court that issued the process or order." To the extent Husband cites *Mosser*, we observe that the Court in *Mosser* addressed whether contempt was an available sanction to enforce a husband's compliance with a provisional order to pay attorney fees. *Mosser*, 729 N.E.2d at 199. The Court held that, once a party has properly been found in contempt, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt. *Id.* at 201. The Court also affirmed the dissolution court's award to compensate the wife for her attorney fees resulting from the husband's contempt. *Id.* However, the Court did not

---

disposition of uncontested issues and a final hearing of contested issues. The court may enter a summary disposition order under this section upon the filing with the court of verified pleadings, signed by both parties, containing:

    (1) a written waiver of a final hearing in the matter of:

        (A) uncontested issues specified in the waiver; or

        (B) contested issues specified in the waiver upon which the parties have reached an agreement;

    (2) a written agreement made in accordance with section 17 of this chapter pertaining to contested issues settled by the parties; and

    (3) a statement:

        (A) specifying contested issues remaining between the parties; and

        (B) requesting the court to order a final hearing as to contested issues to be held under this chapter.

(b) The court shall include in a summary disposition order entered under this section a date for a final hearing of contested issues.

mention any sale of real estate. Husband does not cite to other authority or further develop his argument that the trial court lacked the authority to order the sale of the residence. Further, we note that while the trial court ordered the sale of real estate, which appear to be the only assets readily available to satisfy the purge amounts and allow the dissolution action to proceed, it ordered that the proceeds be used for certain fees and that any remainder would be held in trust pending further order of the court. Husband has not demonstrated reversal is warranted on this basis.

## B. *Proceeds of the Sale*

Husband further argues that, even if the real estate may be sold during the provisional proceedings, the amounts to be paid out of the proceeds set by the trial court were not consistent with the law. He contends the court's award of attorney fees is contrary to the terms of the Agreement and the holding of this Court which he asserts "was that because the Wife has not prevailed in this ongoing action, she is not yet – if ever – entitled to the payment of her attorney fees." Appellant's Brief at 25. He asserts that "[t]he law of the case and *res judicata* provides, among other things, that attorney's fees are not to be awarded provisionally pursuant to the" Agreement. *Id.* Without citation to the record or one of this Court's prior decisions, Husband asserts: "While this Court has previously noted that the Husband did not timely perfect an appeal on the award of maintenance, the distribution of these funds out of the marital real estate, in a way that prevents his argument of set off, should be impermissible." *Id.* at 24. Wife argues that the trial court properly considered the contempt-

related attorney fees and provisional maintenance in the determination of the purge amount and asserts that Husband failed to timely file an appeal of the trial court's 2016 order of provisional maintenance. We note that Husband does not cite to any specific amount as being improperly calculated or develop an argument that certain amounts were not those mentioned in our earlier decision in which we noted that he had not timely challenged the propriety of certain previous awards. [4] *See Nelson*, No. 18A-DR-248, slip op. at 7 n.7 (noting that Husband did not timely challenge the propriety of certain previous awards). With respect to the contempt-related fees, we observe that during the March 13, 2019 hearing, the court admitted a document titled "Summary of Purge Amount" which listed "Contempt Related Attorney's fees" as of January 31, 2019, as $25,092. Wife's Exhibit 15. Wife testified that the exhibit reflected a summary of what she was requesting as the purge amount and answered affirmatively when asked whether supporting documents were attached to the summary to demonstrate how the numbers were calculated. She also indicated that there was an attachment regarding the contempt-related attorney fees and answered affirmatively when asked whether all of the charges which were unrelated to the contempt had been redacted. The trial court ordered Husband to pay contempt-related attorney fees to Wife in the amount of $25,092. Based

---

[4] We do not address at this stage the extent to which maintenance is proper under the terms of the Agreement.

upon the record, we cannot say that Husband has demonstrated that reversal is warranted.[5]

[24] For the foregoing reasons, we affirm the trial court's order.

[25] Affirmed.

Altice, J., and Tavitas, J., concur.

---

[5] To the extent Husband cites *Nelson v. Nelson*, No. 18A-DR-248, we note that decision held that "[a]s Wife has not prevailed in this ongoing action, she is not yet—if ever—entitled to the payment of her attorney fees. The trial court's award of attorney fees is therefore contrary to the terms of the Agreement." Slip op. at 6. However, that case addressed the trial court's January 2, 2018 order that Husband pay Wife $36,000 "as anticipated expert and attorney fees . . . ." January 2, 2018 Order. In the transcript of the January 2, 2018 hearing related to that appeal, the court asked, "as far as the request for additional attorney fees um, and you're asking for, my notes indicate you want 20,000 for, perspective [sic] attorney fees? Um, and a 10,000 for expert witness fees?" January 2, 2018 Transcript at 35. Wife's counsel answered: "Correct, and the almost 6000 that's outstanding now to my firm. The 26 I guess in current and [prospective] attorney fees owed to me, that's not in the lien." *Id.* Unlike in the previous case, the attorney fees here have already been incurred and relate only to Husband's contempt and not merely to "enforce or prevent the breach of any provision of this Agreement" as stated in the Agreement. Appellant's Appendix Volume II at 190.